**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Criminal Case No. 96-cr-00068-NYW-2

UNITED STATES OF AMERICA,

     Plaintiff,

v.

2. TERRY LYNN NICHOLS,

     Defendant.

_____

**ORDER**
_____

This matter is before the Court on the Motion to Notify the Court of Change in Defendant's Financial Circumstances and Set Restitution Payments Schedule ("Motion to Modify Restitution") [Doc. 7024, filed August 26, 2024], filed pro se by Defendant Terry Lynn Nichols ("Defendant" or "Mr. Nichols").[1]  The United States (or "Government") has responded.  [Doc. 7028].  Mr. Nichols has filed a Reply [Doc 7029]; a Supplemental Amendment to Defendant Nichols' Restitution Motion ("First Supplement") [Doc. 7031]; a Second Supplemental Amendment to Defendant Nichols' Restitution Motion ("Second Supplement") [Doc. 7032]; and a Third Supplemental Amendment to Defendant Nichols'

---

[1] Because Mr. Nichols proceeds pro se, the Court construes his filings liberally but does not and cannot act as his advocate, *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991), and applies the same procedural rules and substantive law to Mr. Nichols as to a represented party, *Murray v. City of Tahlequah*, 312 F.3d 1196, 1199 n.3 (10th Cir. 2008).

Restitution Motion ("Third Supplement") [Doc. 7033].[2]  For the reasons set forth in this Order, Defendant's Motion to Modify Restitution is respectfully **DENIED**.

## BACKGROUND

On August 10, 1995, an Indictment was issued by a grand jury in the United States District Court for the Western District of Oklahoma against Mr. Nichols and his co-Defendant, Timothy McVeigh, for the bombing of the Alfred P. Murrah Federal Building in downtown Oklahoma City, Oklahoma that resulted in 168 deaths.  On February 20, 1996, the case was transferred to this District.  [Doc. 984].  On December 23, 1997, the jury convicted Mr. Nichols as to Counts 1 (Conspiracy to Use Weapon of Mass Destruction), and 4–11 (Involuntary Manslaughter).  [Doc. 5814].  On June 4, 1998, the Honorable Richard P. Matsch entered judgment against Mr. Nichols, sentencing him to life imprisonment, and $14,500,000 in restitution.  [Doc. 7024 at 20–23].  Judge Matsch ordered that restitution was payable immediately and did not set a schedule for repayment.  [*Id.* at 22].  The Judgment further orders Mr. Nichols to notify the Court and the Attorney General of any change in the defendant's economic circumstances that might affect the defendant's ability to pay restitution.  [*Id.*].

Mr. Nichols is now, and has been, incarcerated at the Florence ADMAX.  [*Id.* at 2]. He participates in the Inmate Financial Responsibility Program ("IFRP"), which is a Bureau of Prisons program that provides repayment of court-ordered restitution.  *See United States v. Williams*, 996 F.2d 231, 234 (10th Cir. 1993).  He does not challenge the order of restitution or the amount of restitution.  [Doc. 7024 at 5].  Instead, Mr. Nichols

---

[2] Nothing in the Federal Rules of Civil Procedure contemplates successive filings or additional arguments after a litigant has filed a reply to a motion.  The Court has nonetheless reviewed and considered Mr. Nichols's filings in their entirety.

explains that with the death of family members, the contributions to his Inmate Trust Fund Account have dropped and Bureau of Prisons ("BOP") officials "arbitrarily make[] a determination to what the [I]FRP payment will be." [Doc. 7024 at 6]. He further indicates that the BOP prohibits him from signing his artwork and now is interfering with its sale, which impacts his ability to accrue savings in his Inmate Trust Fund. [*Id.* at 8–10; Doc. 7031; Doc. 7032; Doc. 7033]. And he argues that the cost of certain commissaries, including Raisin Bran that is needed for his health, have risen. [Doc. 7024 at 4–5]. The combination of these factors leads Mr. Nichols to ask the Court to set a restitution schedule in accordance with the Mandatory Victim Restitution Act ("MVRA") that specifies a 15% maximum payment cap for IRFP purposes on all new funds he receives into his Inmate Trust Fund Account. [*Id.* at 12; Doc. 7032 at 3].

## LEGAL STANDARDS

### I.    Mandatory Victims Restitution Act

The MVRA requires courts to order, in addition to any other penalty authorized by law, restitution to the victim(s) of any crime of violence. 18 U.S.C. § 3663A(C)(1)(A)(i). Pursuant to 18 U.S.C. § 3664(f)(2), once a court determines the amount of restitution owed to each victim, it must specify in the restitution order the manner in which, and the schedule according to which, the restitution is to be paid, in consideration of the financial resources and other assets of the defendant; the projected earnings and other income of the defendant; and any financial obligations of the defendant. The defendant is obligated to make restitution immediately, unless, in the interest of justice, the Court provides for payment on a date certain or in installments. 18 U.S.C. § 3572(d)(1).

3

According to 18 U.S.C. § 3664(k), upon notification of a material change in a defendant's economic circumstances that might affect his ability to pay restitution, the Court may adjust the payment schedule, as the interests of justice require.  A "material change in the defendant's economic circumstances, under § 3664(k), [is] a bona fide positive or negative change in the defendant's financial circumstances which affects his ability to pay restitution."  *See United States v. Grigsby*, 579 F. App'x 680, 684 (10th Cir. 2014) (internal quotations omitted) (quoting *Cani v. United States,* 331 F.3d 1210, 1215 (11th Cir.2003)).  Whether to grant or deny a motion to modify restitution obligations rests squarely within the Court's discretion.  *See United States v. Carpenter*, 598 F. App'x 576, 579 (10th Cir. 2015) (citing *United States v. Vanhorn,* 399 F.3d 884, 886 (8th Cir. 2005) (per curiam)).

## II.    Inmate Financial Responsibility Program

The BOP established the IFRP to "encourage[] each sentenced inmate to meet his or her legitimate financial obligations."  28 C.F.R. § 545.10.  At initial classification, BOP unit staff help that inmate develop a financial plan and then monitor that person's progress in meeting that plan.  *Id.* at § 545.11.  If an inmate refuses to participate or comply with his financial plan, there are consequences that may impact the inmate's pay, eligibility for certain privileges, and monthly commissary spending limit.  *Id.* at § 545.11(d).  "Critically, the IFRP is a *voluntary* program in which inmates may *choose* to participate."  *See United States v. Washington*, No. 22-cr-00187-WJM, 2026 WL 891282, at *1 (D. Colo. Apr. 1, 2026) (citations omitted).  Put another way, "[p]articipants are required to make payments in accordance with a financial plan developed by the BOP, in exchange for which they receive certain benefits."  *Id.*

**ANALYSIS**

As an initial matter, it is clear that the Court did not order participation in IFRP through the Judgment.  *See generally* [Doc. 7024 at 20–23].  Instead, the Court ordered Mr. Nichols's restitution due immediately, consistent with 18 U.S.C. § 3572(d)(1).  [*Id.*].  Insofar as Mr. Nichols is arguing that the district court has improperly delegated the task of establishing a schedule for court-ordered restitution to the BOP, such attack may only be made through a petition pursuant to 28 U.S.C. § 2255.  *See Davis v. Wiley*, 260 F. App'x 66, 68 (10th Cir. 2008).  Even construing the Petition liberally as bringing a claim pursuant to § 2255, the Tenth Circuit has rejected this improper delegation argument as "doctrinally sound but factually inapposite" in an unpublished opinion that this Court finds to be persuasive.  *See United States v. Elwood*, 757 F. App'x 731, 734 (10th Cir. 2018); *see also Long v. Chester*, No. 10-3240-RDR, 2011 WL 4686638, at *2 (D. Kan. Oct. 4, 2011).

Furthermore, to the extent Mr. Nichols brings a challenge under 28 U.S.C. § 2241 to the implementation and operation of IFRP that applies to the execution of a sentence, *see Dade v. Sanders*, 510 F. App'x 714, 717 (10th Cir. 2013) (observing that § 2241 applies when a petitioner challenges the execution of his sentence, including the IFRP's payment schedule), Mr. Nichols's claim fails for at least two reasons.  First, before Mr. Nichols can seek relief pursuant to § 2241, he must exhaust his administrative remedies. *See Wallette v. Wilner*, 321 F. App'x 735, 738 (10th Cir. 2009) (citing *Williams v. O'Brien,* 792 F.2d 986, 987 (10th Cir.1986) (per curiam)).  Mr. Nichols does not argue that he has exhausted his administrative remedies, and nothing in the record before the Court suggests that he has.  *See generally* [Doc. 7024; Doc. 7029; Doc. 7031; Doc. 7032; Doc.

7033].  Second, even assuming the claim is properly before the Court, *see Wallette*, 321 F. App'x at 739 (citing *United States v. Eccleston,* 521 F.3d 1249, 1253 (10th Cir. 2008) (a court may deny a habeas application on the merits without addressing exhaustion)), Mr. Nichols has cited no authority—and this Court has not independently found any—that permits the Court to interfere in the BOP's implementation of the IFRP.  The Attorney General is responsible for the collection of unpaid restitution, 18 U.S.C. § 3612(c), and that responsibility has been properly delegated to the BOP, *In re Buddhi*, 658 F.3d 740, 742 (7th Cir. 2011).  Mr. Nichols's various complaints regarding how the IFRP is applied to him, whether framed as concerns regarding the conditions related to the sale (or lack thereof)[3] of his artwork or the budgetary difficulties resulting from the fluctuating payments under his IFRP financial plan, are beyond this Court's reach.  "[C]ourts are not authorized to override the Bureau's discretion about such matters, any more than a judge could dictate particulars about a prisoner's meal schedule or recreation (all constitutional problems to the side)."  *Washington*, 2026 WL 891282, at *2 (quoting *United States v. Sawyer,* 521 F.3d 792, 794 (7th Cir. 2008)).

Finally, to the extent that Mr. Nichols argues that § 3664(k) warrants the modification of the restitution to cap his restitution payments at 15% of all new funds in order to facilitate his ability to purchase certain foods and art supplies, this Court respectfully disagrees.  As discussed above, "material change" in the defendant's economic circumstances means a bona fide positive or negative change in the

---

[3] Mr. Nichols complains that the BOP has prohibited him from signing his artwork, which in turn, leads to their diminished value.  *See* [Doc. 7024 at 9].  His supplemental filings also complain of the exclusion of his artwork from the BOP's Create Art Program's art sale.  *See, e.g.*, [Doc. 7033].

defendant's financial circumstances *which affects his ability to pay restitution*. *See Grigsby*, 579 F. App'x at 684. Under that definition, Mr. Nichols does not complain of a material change in *his ability to pay restitution*. When the Court entered a restitution order of $14,500,000 on June 4, 1998, *see* [Doc. 7024 at 20–22], Mr. Nichols's ability to earn income to repay that restitution was necessarily cabined by his sentence of life imprisonment. Those circumstances have not materially changed, particularly when the Court considers the pro rata difference towards the total restitution of a few hundreds of dollars. What has changed, due to the death of family members contributing to his Inmate Trust Account and the limitations upon the sale of his artwork, is *his ability to obtain items for his own personal use.* Though the Court does not minimize Mr. Nichols's concerns, § 3664(k) simply does not contemplate the adjustment of a restitution schedule in these circumstances. *Cf. Washington*, 2026 WL 891282, at *2 (declining to adjust restitution schedule based on a house fire); *United States v. Bronson*, No. 20-20042-01-DDC, 2023 WL 5748516, at *1 (D. Kan. Sept. 6, 2023) (declining to adjust restitution payments based on family contributions); *United States v. Rogers*, No. 07-10162-02, 2012 WL 5266119, at *1 (D. Kan. Oct. 23, 2012) (observing that Defendant's economic circumstances are essentially the same as the time of sentencing, despite no longer having the opportunity for UNICOR-based employment).

## CONCLUSION

Based on the foregoing reasons, it is **ORDERED** that:

(1)   Defendant's Motion to Notify the Court of Change in Defendant's Financial Circumstances and Set Restitution Payments Schedule [Doc. 7024] is respectfully **DENIED**;

7

(2)    With the Motion to Modify Restitution resolved on its merits, Mr. Nichols's

Motion for Status Report [Doc. 7030] is respectfully **DENIED as moot**; and

(3)    The Clerk of Court is **DIRECTED** to mail a copy of this Order to Mr. Nichols

at his address of record.


DATED:  May 18, 2026                          BY THE COURT:

_____
Nina Y. Wang
United States District Judge